UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AMSTRONG CHAPAJONG,<br><br>Defendant. | Case No. 25-cr-180 |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

I.  Summary of the Plea Agreement

As set forth in the attached plea agreement, Defendant Amstrong Chapajong (hereinafter referred to as "Defendant" or "CHAPAJONG") agrees to accept responsibility and plead guilty to Count One of the Information, charging Defendant with Health Care Fraud in violation of Title 18, United States Code, Section 1347.

II.  Elements of the offense

The essential elements of the offense of Health Care Fraud, in violation of Title 18, United States Code, Section 1347(a)(2), each of which the government must prove beyond a reasonable doubt to sustain a conviction are:

First, the Defendant knowingly executed, or attempted to execute, a scheme or artifice to obtain money or property owned by, or under the custody or control of, a health-care benefit program by means of false or fraudulent pretenses, representations, or promises;

Second, the false or fraudulent pretenses, representations, or promises related to a material fact;

Third, the Defendant acted willfully and intended to defraud; and

Fourth, the Defendant did so in connection with the delivery of or payment for healthcare benefits, items, or services.

### III. Statement of Facts

Pursuant to Federal Rule of Criminal Procedure 11, the United States and the Defendant, with the concurrence of Defendant's attorney, stipulate and agree that the following facts are true and accurate. The following statement of facts does not purport to include all of the Defendant's illegal conduct. It also does not purport to be an inclusive recitation of everything that the Defendant heard, knew, or witnessed concerning the illegal activities committed by Defendant and others. It is intended to represent sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea.

## BACKGROUND

### D.C. Medicaid, Personal Care Aide, and Behavioral Health Regulatory Framework

Medicaid is a health insurance program established by Congress under Title XIX of the Social Security Act of 1965. In the District of Columbia ("D.C.), Medicaid is jointly funded by the federal and D.C. governments. Medicaid provides health insurance coverage to D.C. residents whose incomes fall below a certain financial threshold. Recipients of medical services covered by Medicaid are referred to as "beneficiaries." Medicaid is a "health care benefit program" as defined in 18 U.S.C. § 24(b) and a "Federal health care program" as defined in 42 U.S.C. § 1320a-7b(f). Under Medicaid, only medically necessary services are authorized to be reimbursed.

In the District of Columbia, home care agencies ("HCAs") are authorized to provide home care services, including personal care services, to D.C. Medicaid beneficiaries. Such services are provided by personal care aides ("PCAs") and are intended to assist D.C. Medicaid

Doc ID: 96ee0835ac995849731ed117b00f769b4a51f221

beneficiaries in performing the activities of daily living, known as "ADLs." ADLs are defined to include the ability to get in and out of bed, bathe, dress, eat out, take medication prescribed for self-administration, and engage in toileting. Personal care services are billed in 15-minute increments, with each increment representing one (1) unit of service. D.C. PCA regulations required that the actual start and stop time of the service be used to calculate the duration of the service.

Pursuant to Section 12006 of the 21st Century Cures Act, all state Medicaid programs are required to implement an Electronic Visit Verification ("EVV") system to verify personal care services. EVV is a system that electronically captures details of home visits and services provided by caregivers while ensuring that beneficiaries are receiving the support they require, and the rendered services are billed accurately. By January 1, 2020, all PCA employees in the District of Columbia were required to utilize the EVV system to clock-in and clock-out when performing services at a beneficiary's home. The EVV system would in turn record the precise physical location of the PCA to help verify that the service was rendered.

In the District of Columbia, behavioral health services were administered by the D.C. Department of Behavioral Health ("DBH"). As the primary mental health authority in D.C., DBH is responsible for implementing and overseeing D.C.'s Mental Health Rehabilitative Services ("MHRS") program, a program covered by Medicaid. MHRS services are intended to assist eligible beneficiaries navigate and alleviate the impact of mental and behavioral health issues. Beneficiaries who received MHRS services were often referred to as "consumers."

Under the MHRS program, Medicaid covers and reimburses standard behavioral health services, such as Community Support services. Community Support services include, among other things, assistance and support for mental-health consumers in stressor situations, individual

Doc ID: 96ee0835ac995849731ed117b00f769b4a51f221

mental health interventions, assistance with increasing social support skills to enable consumers to ameliorate life stresses, and the development of mental health relapse prevention strategies. Community Support services are provided by a consumer's Community Support Worker ("CSW") under the auspices of a certified Medicaid Provider known as a Core Services Agency ("Provider").

In D.C., MHRS encounters with consumers were billed in "units," which are equivalent to 15 minutes of time providing services to a consumer. DBH regulations required the actual start and stop time of MHRS encounters to be used to calculate the duration of the service. For purposes of reimbursement, Medicaid authorizes service encounters exceeding seven minutes to be rounded to the nearest whole unit.

Providers are required to maintain up-to-date records and to accurately document all MHRS encounters billed under the Provider's electronic medical records ("EMR") system. In D.C., Providers typically use an EMR platform called Credible. In order to be reimbursed by Medicaid for MHRS services provided to consumers, CSWs are required to document the service in Credible by inputting clinical encounter notes that included, among other information, consumer information, treatment notes, and dates and times of service. CSWs are authorized to conduct encounters in several ways. A "tele" visit indicated a telephonic or virtual encounter with a consumer. CSWs are required to validate the accuracy and authenticy of the services by signing their names.

Providers, as well as all employees of Providers, including CSWs and PCAs, are required to know, understand, and follow all federal and local laws, including Medicaid rules and regulations applicable in Washington D.C.

Doc ID: 96ee0835ac995849731ed117b00f769b4a51f221

mental health interventions, assistance with increasing social support skills to enable consumers to ameliorate life stresses, and the development of mental health relapse prevention strategies. Community Support services are provided by a consumer's Community Support Worker ("CSW") under the auspices of a certified Medicaid Provider known as a Core Services Agency ("Provider").

In D.C., MHRS encounters with consumers were billed in "units," which are equivalent to 15 minutes of time providing services to a consumer. DBH regulations required the actual start and stop time of MHRS encounters to be used to calculate the duration of the service. For purposes of reimbursement, Medicaid authorizes service encounters exceeding seven minutes to be rounded to the nearest whole unit.

Providers are required to maintain up-to-date records and to accurately document all MHRS encounters billed under the Provider's electronic medical records ("EMR") system. In D.C., Providers typically use an EMR platform called Credible. In order to be reimbursed by Medicaid for MHRS services provided to consumers, CSWs are required to document the service in Credible by inputting clinical encounter notes that included, among other information, consumer information, treatment notes, and dates and times of service. CSWs are authorized to conduct encounters in several ways. A "tele" visit indicated a telephonic or virtual encounter with a consumer. CSWs are required to validate the accuracy and authenticy of the services by signing their names.

Providers, as well as all employees of Providers, including CSWs and PCAs, are required to know, understand, and follow all federal and local laws, including Medicaid rules and regulations applicable in Washington D.C.

Doc ID: 96ee0835ac995849731ed117b00f769b4a51f221

**Offense Conduct**

Beginning on a date unknown, but by at least on or about March 3, 2020, and continuing through at least on or about January, 28, 2022, in the District of Columbia and elsewhere, CHAPAJONG worked as both a PCA and CSW and knowingly and willfully executed a scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the control of, the D.C. Medicaid program, a health care benefit program, as defined in 18 U.S.C. § 24(b), in connection with the delivery of and payment for health care benefits, items, and services, namely Personal Care Aide services and Mental Health Rehabilitative Services, all in violation of 18 U.S.C. § 1347(a)(2).

Starting in or around January 2018, CHAPAJONG began working for multiple companies as a PCA, to include Integrated Community Services, Inc., Berhan Home Health Care Agency, Inc., and Premium Select Home Care, Inc. Additionally, starting in or around February 2020, CHAPAJONG began working as a CSW for NYA Health Care Services. In those roles, he was well aware of the requirements detailed above. Specifically, CHAPAJONG was aware that he needed to accurately document the start and stop times for each service he provided, that he could not bill for two patients at the same time, and that he was required to clock-in and clock-out using an EVV telephone application when starting and stopping PCA services in order to verify the service was actually performed. He also knew that submitting fraudulent information to the above companies for the purpose of obtaining Medicaid reimbursement for services unrendered, was a crime.

On at least 451 days between March 3, 2020 and January 28, 2022, CHAPAJONG made a materially false representation that he provided PCA and MHRS services in the District of

Doc ID: 96ee0835ac995849731ed117b00f769b4a51f221

Columbia. As part of his scheme, CHAPAJONG claimed to be in two places at once—falsely claiming to provide in-person PCA services for one patient during a time that overlapped with in-person or telephonic MHRS services to another patient at a different location. As a result of his false representations, Medicaid paid for services not rendered.

On or about at least the dates specified below, CHAPAJONG caused the submission of the following materially false and fraudulent claims for reimbursement to Medicaid for PCA services he purported to provide in D.C., all of which were not supported by the relevant EVV data, and also overlapped with in-home community support services that CHAPAJONG claimed to provide to another beneficiary at a different location. By doing this, CHAPAJONG was double billing D.C. Medicaid for services he was not in fact rendering, and was causing the submission of false and fictitious Medicaid billings for reimbursement.

| Service Date | Client Name | Call In Latitude | Call In Longitude | Call Out Latitude | Call Out Longitude | Hours Claimed | EVV Locations |
|---|---|---|---|---|---|---|---|
| 4-Oct-2021 | J.B. | 38.93084 | -76.90106 | 38.93084 | -76.90104 | 8 | Maryland |
| 5-Oct-2021 | J.B. | 38.93084 | -76.90107 | 38.93086 | -76.90103 | 8 | Maryland |
| 6-Oct-2021 | J.B. | 38.93089 | -76.90105 | 38.93092 | -76.90118 | 8 | Maryland |
| 7-Oct-2021 | J.B. | 38.91703 | -76.92335 | 38.93088 | -76.90105 | 8 | Maryland |
| 12-Oct-2021 | J.B. | 38.9308 | -76.90145 | 38.91519 | -76.84528 | 8 | Maryland |
| 14-Oct-2021 | J.B. | 38.93087 | -76.90104 | 38.93084 | -76.90103 | 8 | Maryland |

CHAPAJONG agrees that his fraudulent billing caused at least $113,243 in losses to Medicaid.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _____

Jason Facci (DC Bar 1027158)  
Special Assistant United States Attorney  
Fraud, Public Corruption, & Civil Rights Section  
601 D. Street, NW  
Washington, D.C. 20530  
(202) 252-7742  
Jason.Facci@usdoj.gov  

Date: June 27, 2025

## DEFENDANT'S ACKNOWLEDGMENT

I have read the Statement of Offense setting forth the facts related to my guilty plea. I have discussed this proffer fully with my attorney, Christopher Mutimer, Esq. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

07 / 10 / 2025

Date

Amstrong Chapajong

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting the Government's proffer of evidence related to my client's guilty plea. I have reviewed the entire proffer with my client and have discussed it with him fully. I concur in my client's agreement with and acceptance of this proffer.

.

07 / 10 / 2025

Date

Christopher Mutimer, Esquire
Attorney for Amstrong Chapajong

Doc ID: 96ee0835ac995849731ed117b00f769b4a51f221